**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KYWAN M. HAYES,**

        **Petitioner,**

        **v.**

**WARDEN, NOBLE
CORRECTIONAL INSTITUTION,**

        **Respondent.**

        **CASE NO. 2:16-CV-00248
        JUDGE MICHAEL H. WATSON
        Magistrate Judge Kimberly A. Jolson**

<u>**REPORT AND RECOMMENDATION**</u>

        Petitioner, a state prisoner, brings the instant Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition (Doc. 1), Respondent's Return of Writ (Doc. 6) and Supplemental Return of Writ (Doc. 15), Petitioner's Traverse (Doc. 16), and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that this action be **DISMISSED.**

**I.      FACTS AND PROCEDURAL HISTORY**

        The state appellate court summarized the facts and procedural history of this case as follows:

> On April 23, 2012, appellant, Matthew DeLoach, Ramal Milton, and Ricky Sumling drove to the home of Christopher and Cassidy Good at 7187 Lithopolis Road in Franklin County. Two of the individuals knocked and, upon Mrs. Good opening the door, forced their way into the house. Appellant and the other individual followed. Mrs. Good was pushed to the ground while holding her infant child. The child fell from her arms. A clump of hair was ripped from her head and she was held at gunpoint while the home was ransacked and burgled. Mrs. Good identified appellant as the lookout and the person who stood by the door and prevented her from leaving. She also identified him as the intruder who gently picked up the child and handed him to her while the burglary was occurring. Mr. Good was forced to the ground at gunpoint in the

kitchen. In the midst of this, one of Mr. Good's workers arrived, causing appellant and his companions to run from the house toward DeLoach's car. Mr. Good ran after them. Sumling turned and shot Mr. Good in the leg. Appellant, DeLoach, Milton, and Sumling fled; however, about a mile down the road, they crashed the car. Upon crashing, appellant separated from his companions and hid in a culvert where he was later found by sheriff deputies.

Earlier the same day, the Goods' home had been burglarized in a separate incident. The Goods did not contact the police at that time because they were growing large amounts of marijuana in their basement. Sumling testified that appellant came to his home that same morning to smoke marijuana and play video games. Appellant was present when appellant's cousin, identified as "T," came over and notified Sumling about a tip he had received from a man named "Black" regarding a large amount of marijuana and cash in the Goods' home. Black claimed to have burglarized the Goods' home that morning. Sumling testified that he, "T," Black, DeLoach, and Milton decided to go back to the Goods' home and take the marijuana and cash. He further testified that appellant was part of the planning for the robbery and burglary of the Goods' residence.

After being apprehended, appellant was interviewed by Detective Braden of the Madison Township Police Department. According to Detective Braden, appellant stated that he went to the Goods' home only to purchase marijuana, but not to rob them. Appellant testified at trial to the same and denied knowing what Sumling, Milton, and DeLoach had planned. Detective Braden further testified, however, that appellant admitted that he knew there was a "grow operation" in the house and that he was involved in the planning of the burglary. (Tr. 318, 322–23, 342.)

Appellant was charged with one count of aggravated burglary, one count of aggravated robbery, two counts of kidnapping, all felonies of the first degree, and one count of felonious assault, a felony of the second degree. All counts were accompanied by three-year firearm specifications. On October 21, 2013, a jury found appellant guilty of all counts and specifications. On December 2, 2013, the trial court sentenced appellant, merging the kidnapping counts with the aggravated robbery count. The court ultimately imposed a nine-year prison sentence. Appellant timely filed this appeal.

Appellant asserts one assignment of error:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED BURGLARY; AGGRAVATED ROBBERY; FELONIOUS ASSAULT AND KIDNAPPING AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Hayes*, No. 14AP-2, 2014 WL 6679185, at *1–2 (Ohio Ct. App. Nov. 26, 2014).  On November 26, 2014, the appellate court affirmed the judgment of the trial court.  (*Id.*).  On June 24, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  *State v. Hayes*, 33 N.E.3d 66 (Ohio 2015).

On February 9, 2015, Petitioner filed an application to reopen the appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. 6-1, PageID# 189).  He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of the denial of the effective assistance of trial counsel based on his attorney's failure to seek a judgment of acquittal or object to imposition of sentences on firearm specifications; that his convictions on firearm specifications denied him due process as the verdicts were not supported by the evidence and were against the manifest weight of the evidence; that the trial court improperly imposed two three-year mandatory prison terms for each of the firearm specifications in Counts 2 and 3; and that the trial court improperly imposed consecutive prison terms in violation of the double jeopardy clause on firearm specifications in view of the evidence failing to establish his use or possession of a firearm.  (Doc. 6-1, PageID# 190).  On April 14, 2015, the appellate court denied the Rule 26(B) application.  (*Id.*, PageID# 221).  On August 26, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  *State v. Hayes*, 36 N.E.3d 193 (Ohio 2015).

On March 22, 2016, Petitioner filed the instant *pro se* petition pursuant to 28 U.S.C. § 2254.  (Doc. 1).  He asserts that the trial court unconstitutionally imposed two three-year consecutive prison terms on firearm specifications when the evidence failed to establish his use of firearms (claim one); that he was denied the effective assistance of appellate counsel because his attorney failed to raise such issue on appeal (claim two); that the State of Ohio denied him meaningful review of the foregoing claims (claim three); that Ohio's Criminal Code fails to provide sufficient notice that a complicitor may be sentenced without a conviction on firearm specifications, in denial of due process (claim four); and that the evidence was constitutionally insufficient to sustain his conviction on felonious assault (claim five).  (*Id.*).  It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## II.    DISCUSSION

Respondent argues that Petitioner's claims are procedurally defaulted or without merit. (*See generally* Docs. 6, 15).

### A.  Procedural Default (Claims One, Three, and Four)

#### 1.  *Standard*

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus.  28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims must first present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*,

459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). However, where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas[.]" *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" describes the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State such that the State has not had a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. One aspect of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by a petitioner's failure to observe a state procedural rule. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." (*Id.*) Second, the Court must determine whether the state courts actually enforced the state procedural sanction. (*Id*.) Third, it must be decided whether the state

procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. (*Id*.) Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. (*Id*.) This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

As to the fourth part of the *Maupin* analysis, in order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion

6

requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### 2.    Application

In claim one, Petitioner asserts that the evidence is insufficient to establish his guilt on the firearm specifications. Petitioner did not raise this claim on direct appeal. In claim three,

Petitioner asserts that he has been denied meaningful access to the state courts.  In claim four, Petitioner asserts that Ohio law fails to provide adequate notice that a complicitor may be sentenced without a conviction on firearm specifications, and that his sentence therefore violates due process.  Petitioner never raised claims three and four in the state courts.  He may no longer present any of these claims to the state courts by operation of Ohio's doctrine of *res judicata. See State v. Perry*, 226 N.E.2d 104 (1967) (holding that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*); *see also State v. Cole*, 443 N.E.2d 169 (1982); *State v. Ishmail*, 423 N.E.2d 1068 (1981).  Thus, the first two factors of the *Maupin* test are satisfied.

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test.  To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *See Coleman v. Thompson*, 501 U.S. at 732–33.  To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts.  *Ford v. Georgia*, 498 U.S. 411 (1991).  "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).  The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006*); Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

8

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of res judicata in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

As cause for his procedural default, and in habeas corpus claim two, Petitioner asserts the denial of the effective assistance of appellate counsel. As discussed, the denial of the effective assistance of appellate counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. at 451–52. Here, Petitioner argues that the trial court improperly sentenced

9

him on firearm specifications, because his convictions on aggravated burglary, aggravated robbery, felonious assault, and kidnapping were merged at sentencing as involving allied offenses of similar import under Ohio law.  Traverse (Doc. 16, PageID# 940.)  However, Petitioner did not raise this same issue in the state appellate court.  *See* Pro Se Application to Reopen Appeal (Doc. 6-1, PageID# 189-196); Memorandum Decision (Doc. 6-1, PageID# 221-23.)  Therefore, he has procedurally defaulted this claim for review in these proceedings, and it therefore cannot constitute cause for his procedural default.  Further, the record reflects that, at sentencing, the trial court merged Petitioner's kidnapping convictions into his aggravated robbery conviction, and sentenced him to two terms of three years actual incarceration for the firearm specifications on Counts 2 and 3 only.  Judgment Entry (Doc. 6-1, PageID# 96-97.)

Petitioner, however, contends that the state courts misinterpreted his pleadings by construing his Rule 26(B) application as not to raising such argument.  Traverse (Doc. 16, PageID# 940-41.)  Upon review of the record, however, the Court disagrees.  (*See* Doc. 6-1, PageID# 190.)  Further, in his Rule 26(B) appeal to the Ohio Supreme Court, Petitioner raised only one proposition of law—*i.e.*, that he had been improperly punished on firearm specifications because he did not commit the acts as required by law in order to be found guilty of the offenses charged.  (*Id.*, PageID# 229.)  In short, Petitioner has failed to establish cause and prejudice for the procedural default of habeas corpus claims one, three and four.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims."  *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995).  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the

procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is " 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted).  Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

In sum, claims one, three, and four are procedurally defaulted.

## B.  Merits (Claims Two and Five)

### 1.  Standard

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the familiar standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this case.  The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*,—U.S.—, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

12

28 U.S.C. § 2254(d).

Further, under AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

13

### a. Claim Two

To the extent that Petitioner asserts in claim two the same claim that he raised in the Ohio Court of Appeals in Rule 26(B) proceedings, *i.e.*, that the evidence was insufficient to sustain his convictions on firearm specifications, this Court will address that same issue here. The state appellate court denied Petitioner's claim in relevant part as follows:

> Appellant claims that his appellate counsel provided ineffective assistance by failing to set forth four assignments of error related to the firearm specifications associated with his convictions. Each of the proposed assignments of error essentially asserts that the jury erred by finding appellant guilty on the firearm specifications and the trial court erred by imposing sentences on those specifications because appellant did not possess or control a firearm and did not display, brandish, or indicate that he possessed a firearm. However, as this court has recognized, "an unarmed accomplice * * * can be convicted of a firearm specification based on an aider and abettor status." *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 17. *See also State v. Jackson*, 10th Dist. No. 10AP-693, 2011-Ohio-4362, ¶ 37 ("[E]ven if appellant himself did not actually possess a weapon during the commission of these offenses, it is enough that his co-defendant * * * clearly possessed a weapon."); *State v. Hall*, 10th Dist. No. 08AP-939, 2009-Ohio-2277, ¶ 28 ("Ohio case law also supports the applicabililty of a firearm specification to a person who assists other people who are known to be using a firearm to commit a crime of violence.").
>
> We conclude that appellant's counsel did not perform deficiently by failing to assert the proposed assignments of error. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). *See also State v. Campbell*, 69 Ohio St.3d 38, 53 (1994)("Counsel need not raise all nonfrivolous issues on appeal."); *State v. Jones*, 8th Dist. No. 80737, 2003-Ohio-4397, ¶ 4("[I]n regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions."). Moreover, "appellate counsel is not required to argue assignments of error which are meritless." *Lee* at ¶ 3. The law is clear that appellant

> could be convicted and sentenced on the firearm specifications as an aider and abettor; therefore, appellant's appellate counsel did not perform deficiently by failing to raise the proposed assignments of error.

(Doc. 6-1, PageID# 221-23.)

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, No. 12–1705, ——F. App'x ——, 2013 WL 6284355, at *5 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638

15

(1987)....Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* citing *Wilson*....The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ( "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden*, *Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013).  Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court observed that while "'[s]urmounting *Strickland*'s high bar is never...easy.' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (and citing *Strickland*, 466 U.S. at 689). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Despite Petitioner's argument to the contrary, Ohio permits an aider and abettor to be convicted on firearm specifications regardless of whether he, himself, actually possessed the firearm in connection with the offenses charged. *See, e.g.*, *State v. Albert*, No. 14AP-30, 2015 Ohio App. Lexis, at *10 (Ohio Ct. App. 2015). Consequently, Petitioner has failed to establish the denial of the effective assistance of appellate counsel based on his attorney's failure to raise such issue on appeal.

### b.  Claim Five

In claim five, Petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction as an aider and abettor in the commission of felonious assault. The state appellate court rejected this claim:

> "Sufficiency of the evidence is a legal standard that tests whether
> the evidence introduced at trial is legally sufficient to support a

verdict." *State v. Cassell*, 10th Dist. No. 08AP–1093, 2010–Ohio–1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds as recognized in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997).

"While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassel*l at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007–Ohio–2202, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving the conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id*., quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This authority "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

\*\*\*

Felonious assault, as relevant to appellant's conviction, is defined as: "No person shall knowingly * * * (1) Cause serious physical harm to another or to another's unborn [or] (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C.2903.11(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "[F]elonious assault under R.C. 2903.11(A), combined with the definition of 'knowingly' found in R.C. 2901.22(B), does not require that a defendant intended to cause 'serious physical harm,' but rather, that the defendant acted

with an awareness that the conduct probably would cause such harm." (Emphasis added.) *State v. Smith*, 10th Dist. No. 04AP–726, 2005–Ohio–1765, ¶ 28, citing *State v. Lee*, 10th Dist. No. 97APA12–1629 (Sept. 3, 1998).

Finally, in addition to the statutory definitions of the offenses charged, we also consider the elements for complicity found in R.C. 2923.03:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense[.]

The Supreme Court of Ohio has stated:

To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

In challenging the jury's verdicts, appellant argues generally that the state's witnesses were not credible because they benefited from cooperating with the state. Specifically, appellant challenges the testimony of Christopher and Cassidy Good and Ricky Sumling. At the time of the burglary, the Goods were growing a significant amount of marijuana plants in their home. As a result, they were both indicted on charges of illegal cultivation of marijuana, a felony of the second degree, possession of marijuana and aggravated possession of drugs, both felonies of the third degree. These charges were still pending at the time of appellant's trial. Both Goods testified that they understood that they would not receive anything in regards to their case in exchange for their testimony at appellant's trial. Ricky Sumling was charged with the same offenses as appellant, as well as having a weapon under disability. Sumling testified that, as part of a plea bargain, he would testify truthfully against appellant and his other companions. In exchange, the state would jointly recommend a

prison sentence of five years (rather than the possible eleven years) for his plea of guilty to felonious assault.

\*\*\*

Co-defendant Ricky Sumling testified that appellant was "in on [the] planning" to go to the victims' house and make some quick money. (Tr. 224.) Sumling also testified that initially "[w]asn't no plan because wasn't nobody supposed to be there. Supposed to be just a burglary. Black dude, the dude that came over, told us there was nobody there, we had to go and do it right then and there." (Tr. 224.) Sumling testified that he had the gun with him because he was just "[b]eing cautious and being suspicious of the circumstances." (Tr. 227.) However, once they saw the house, they realized that people were in the house. Then, according to Sumling, they devised a plan to continue with the robbery. (Tr. 230.) Sumling also testified that appellant went searching through the house for money while Sumling held a victim down with a gun. (Tr. 235.) At the conclusion of his direct examination, Sumling reiterated that appellant was in on the planning of the burglary as well as the planning of the robbery. (Tr. 246.)

Construing this evidence in favor of the state, as we are required to do when considering a challenge to the sufficiency of the evidence, the jury may have logically concluded that appellant participated in the burglary, robbery, and kidnapping at the very least as an accomplice. Furthermore, the jury may have concluded that appellant knowingly supported, assisted, or cooperated with Sumling in the commission of felonious assault by shooting Mr. Good. In consideration of the evidence presented at trial, we conclude there was sufficient evidence to support the verdicts. Furthermore, upon review of the record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice as to warrant reversal of the convictions. Accordingly, we find that appellant's convictions are not against the manifest weight of the evidence.

With respect to the felonious assault charge, the dissent raises an important issue, and we agree that appellant's "mere presence" at the time of the shooting would not suffice to establish accomplice liability. *See State v. Widner*, 69 Ohio St.2d 267, 269 (1982) ("Appellee contends—and we agree—that the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor."); *State v. Ranson*, 10th Dist. No. 01AP–1049, 2002–Ohio–2398, ¶ 29 ("The mere presence of the accused during the commission of a crime does not

20

necessarily amount to being an accomplice."). We also agree that the evidence does not suggest that appellant actively encouraged, advised, incited, or even assisted with the shooting of Mr. Good. *Compare In re T.K.*, 109 Ohio St.3d 512, 2006–Ohio–3056 (defendant was in a group of individuals who were passing around a gun and was heard to shout "shoot" and "shoot the [expletive]" immediately before shots were fired by an unidentified member of the group).

We do find, however, that the evidence supports a conclusion that appellant cooperated with Ricky Sumling in all of the day's activities, from the planning of the robbery to the flight therefrom, and, therefore, appellant cooperated with the felonious assault as well. Sumling testified that appellant was in on the planning of the burglary and robbery. He also testified that appellant was present when his companions pointed the gun at Mr. Good inside the house during the course of the robbery. Mrs. Good similarly testified that appellant was present during these events. Sumling shot Mr. Good, as he, appellant, and their companions were fleeing the scene. Both Sumling and appellant testified that Mr. Good was pursuing the group and reaching for appellant just before Sumling fired the shots. (Tr. 236, 410.) After the shooting, appellant proceeded to get into the car with Sumling and their companions. Appellant did not part company with Sumling until after the car crash when Sumling and DeLoach fled on foot in one direction, and appellant and Milton fled on foot in another direction.

" '[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971). "A common purpose among two people to commit a crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct." *State v. Dortch*, 10th Dist. No. 12AP–125, 2012–Ohio–6196, ¶ 31. In *State v. Ranson*, 10th Dist. No. 01AP–1049, 2002–Ohio–2398, this court considered the issue of accomplice liability under similar circumstances:

Because the intent of an accused person dwells in his mind, * * * we must examine the surrounding facts and circumstances to determine whether appellant aided or abetted in committing aggravated robbery, robbery, and felonious assault. In this regard, we can determine by his actions that appellant's complicity to attempt to cause physical harm to another, possess a deadly

21

weapon, or inflict or attempt to inflict or threaten to inflict physical harm upon another began at the moment appellant chose to run away from the crime scene with his accomplices. His complicity continued when he chose to enter the getaway vehicle and ride in the passenger seat of the van with his accomplices in an attempt to elude the police. * * * This is not a case in which appellant was merely an innocent passenger in the vehicle. He had a previous connection with the crimes and occupants and was intentionally using the vehicle, and benefitting from the unlawful actions of his accomplices, in order to escape capture by the police. By his conduct, appellant encouraged the crimes and his criminal intent may be inferred from his presence, companionship, and conduct both before and after the break-in at the pharmacy.

*Id*. at ¶ 32.

In this case, appellant fled the scene together with Sumling, DeLoach, and Milton. As in Ranson, appellant fled toward the same vehicle as his companions, rather than breaking his association by fleeing alone. Further, the evidence demonstrates that Mr. Good was reaching for appellant immediately before he was shot. Thus, appellant directly benefitted from Sumling's action in shooting Mr. Good; otherwise, Mr. Good may have hindered appellant's ability to flee. Moreover, after Mr. Good was shot, appellant continued to flee with Sumling, DeLoach, and Milton until the car crashed. Under the facts presented here, we conclude that appellant had preceding and subsequent connection and involvement with the events and circumstances leading to the commission of the crimes. *See, e.g., State v. Goudlock*, 8th Dist. No. 35172 (Oct. 14, 1976). This is not a case where the jury clearly lost its way and created a manifest miscarriage of justice by convicting appellant of felonious assault as an accomplice. *See Thompkins* at 387.

Having found that the convictions are supported by sufficient evidence. . . appellant's assignment of error is overruled.

*State v. Hayes*, 2014 WL 6679185, at *2-6 (footnote omitted).[1]

---

[1] Judge Tyack concurred in part, and dissented in part, as follows:

I respectfully dissent.

I simply find no support in the record for a finding that Kywan Hayes knowingly aided or abetted in the shooting of Christopher Good. The mere presence of Hayes at the time the shooting occurred does not make him an accomplice in the shooting.

A claim of insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (*en banc*).  In order for a conviction to be constitutionally sound, every element of the crime must have been proven beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *see also State v. Jenks*, 61 Ohio St.3d 259 (1991) (applying rule).  Of course, it is state law that determines the elements of an offense.  Once the state has adopted the elements of the offense, the state must then prove each of those elements beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

AEDPA requires two levels of deference to state decisions addressing a claim of sufficiency of the evidence: one to the trier of fact's verdict under *Jackson v. Virginia*, and a second to the appellate court's consideration of that verdict. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

---

The author of the majority opinion cites the syllabus to *State v. Johnson*, 93 Ohio St.3d 240 (2001), but then does not follow it.  Hayes did not support, assist, encourage, cooperate with, advise or incite the shooter to shoot.  The shooter, Ricky Sumling, did the shooting with no help or encouragement of Kywan Hayes.

Under the circumstances, Hayes is not guilty of complicity in felonious assault.  To the extent the majority of this panel affirms the conviction on that charge, I dissent.

*State v. Hayes*, 2014 WL 6679185, at *7.

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. ——, ——, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. — , —, 132 S.Ct. 2060, 2062 (2012) (*per curiam*).  *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  This hurdle is difficult to surmount, and, for the reasons articulated by the state appellate court, the Court is not persuaded that Petitioner has done so here.  Ricky Sumling testified that he, along with Petitioner and their co-defendants planned and participated in the robbery, which involved the use of a firearm.  *See Transcript* (Doc. 6-3, PageID# 474-76, 478-80.)  As they were running away, Christopher Good attempted to grab the Petitioner and Sumling shot Good twice.  (*Id.*, PageID# 481–82.)  When viewing all of the evidence in the light most favorable to the prosecution, this Court finds  that the record reflects more than Petitioner's mere presence at the scene, and that the state appellate court did not unreasonably determine that it was constitutionally sufficient to sustain Petitioner's conviction.  In sum, claim five is without merit.

## III.        RECOMMENDED DISPOSITION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


Date:  March 24, 2016                                    /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE